IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RENATE URSULA MESHECHOK,

     Plaintiff,

vs.

ROBERT V.M. MESHECHOK; ALEX
MESHECHOK; SHARON C. DUVALL;
DARLENE BROWN; WILLIAM
HELVIE; ELIZABETH D. LYNCH; and
DOES 1 through 20,

     Defendants.

Civil Action File

No. _____

## COMPLAINT FOR DAMAGES

Plaintiff, RENATA URSULA MESHECHOK, by her attorneys, files this Complaint against Defendants, ROBERT V.M. MESHECHOK; ALEX MESHECHOK; SHARON C. DUVALL; DARLENE BROWN; WILLIAM HELVIE; ELIZABETH D. LYNCH; and DOES 1 through 20, and alleges as follows.

1.    This is an action by Plaintiff Renata Ursula Meshechok arising from the forgery of her signature on a forged Power of Attorney, and the subsequent fraudulent application of her signature to deeds purportedly selling her house, which were thereafter recorded with the Fulton County Clerk's Office, resulting in the unlawful conveyance of her ownership interest in the house she owned with her

husband as a joint tenant with right of survivorship.  She received no proceeds from the $2,750,100 sale of her house.  She did not even know her house had been sold, because the sale was done without her knowledge or consent, then concealed from her for years.

2.      All allegations herein are based on information and belief except those allegations which pertain to Plaintiff or her counsel.  Allegations pertaining to Plaintiff or her counsel are based upon, *inter alia*, Plaintiff's or her counsel's personal knowledge, as well as Plaintiff's or her counsel's own investigation. Further, each allegation alleged herein either has evidentiary support or is likely to have evidentiary support, after a reasonable opportunity for additional investigation and discovery.

## PARTIES, JURISDICTION, & VENUE

3.      Plaintiff Renata Ursula Meshechok ("Plaintiff" or "Ms. Meshechok") is a resident of Germany.  Plaintiff avails herself of the jurisdiction of this Court.

4.      Defendant Robert V.M. Meshechok ("Mr. R. Meshechok") is, on information and belief, a resident of Hollywood, Florida.

5.      Defendant Alex Meshechok ("Mr. A. Meshechok") is, on information and belief, a resident of Miami, Florida, and is Mr. R. Meshechok's son.

6.      Defendant Sharon C. Duvall (Ms. Duvall) is, on information and belief, a resident of the State of Georgia; was a notary public in the Stone Mountain Judicial

Circuit, Dekalb County, Georgia, from December 23, 1994 until December 22, 1998; is an attorney licensed to practice in the State of Georgia; and was Mr. R. Meshechok's attorney of record in the purported 1998 sale of the house owned by Mr. R. Meshechok and Ms. Meshechok.

7.     Plaintiff lacks knowledge of the residency of Defendant Ms. Brown, who, on information and belief, was Defendant Ms. Duvall's secretary at the time of the purported 1998 sale of the house owned by Mr. R. Meshechok and Ms. Meshechok.

8.     Defendant Mr. Helvie, on information and belief, is a resident of Atlanta, Georgia.

9.     Defendant Ms. Lynch, on information and belief, is a resident of Atlanta, Georgia.

10.     Without limitation, defendants DOES 1 through 20 include principals, agents, partners, joint ventures, and/or affiliates of Defendants.

11.     Plaintiff is unaware of the true names of defendants DOES 1 through 20.  Defendants DOES 1 through 20 are thus sued by fictitious names, and the pleading will be amended as necessary to obtain relief against defendants DOES 1 through 20 when the true names are ascertained, or as permitted by law or by the Court.

12.     At all material times herein, each defendant was the principal, agent, servant, co-conspirator, and/or employer of each of the remaining defendants, acted within the purpose, scope, and course of said agency, service, conspiracy, and/or employment and with the express and/or implied knowledge, permission, and consent of the remaining defendants, and ratified and approved the acts of the other defendants.  However, each of these allegations is deemed an alternative theory whenever not doing so would result in a contradiction with the other allegations.

13.     There exists, and at all times herein mentioned existed, a unity of interest and ownership between the named defendants (including DOES) such that any corporate individuality and separateness between the named defendants has ceased, and that the named defendants are alter egos in that the named defendants effectively operated as a single enterprise, or are mere instrumentalities of one another.

14.     Whenever reference is made in this Complaint to any act, deed, or conduct of Defendant, the allegations mean that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, principals, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of Defendant's ordinary business affairs.

15.     The parties are of diverse citizenship and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).  Jurisdiction also is proper

under 28 U.S.C. § 1331, because this action arises under the laws of the United States including the federal Racketeer Influences and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.

16.    Jurisdiction is proper in this Court with respect to the state claims alleged, as they are so related to the federal claims that they form the same case or controversy under Article III. 28 U.S.C. § 1367.

17.    Venue is proper before this Court because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and a substantial part of property that is the subject of the action is situated in this jurisdiction.  28 U.S. Code § 1391(b).

## FACTUAL ALLEGATIONS

18.    Ms. Meshechok and Mr. R. Meshechok (the "Joint Tenants") were married on or about January 3, 1977 in Las Vegas, Nevada.

19.    On or about June 1, 1992, the Joint Tenants purchased a house located at 3655 Paces Ferry Road NW, Atlanta, GA 30327-3001 (the "Property") in Fulton County, Georgia, for One Million, Eight Hundred Fifty Thousand Dollars ($1,850,000).

20.    The Joint Tenants took title to the Property as joint tenants with rights of survivorship, as evidenced by that certain general warranty deed recorded at Deed Book 15335, Pages 35-37, Fulton County, Georgia records.  A true and correct copy

of the general warranty deed reflecting this transaction is attached hereto as **<u>Exhibit A</u>**.

21.    On information and belief, in or about October of 1998, Defendants Mr. R. Meshechok, Mr. A. Meshechok, and Ms. Duvall together made plans to sell the Property without the knowledge, consent, or participation of Plaintiff Ms. Meshechok.

22.    On or about October 2, 1998, Defendant Mr. A. Meshechok spoke with Defendant Ms. Duvall by telephone regarding revising the Forged Power of Attorney, defined below, for execution in Ms. Duvall's office.

23.    On or about October 2, 1998, within the office of Defendant Ms. Duvall, some person other than Ms. Meshechok signed Ms. Meshechok's name on a purported Power of Attorney document (the "Forged Power of Attorney") purporting to appoint Mr. R. Meshechok at Ms. Meshechok's attorney-in-fact for the purported purpose of executing and delivering documents deemed necessary by Mr. R. Meshechok to consummate the leasing or sale of the Property.  The Forged Power of Attorney is evidenced by that certain purported power of attorney recorded at Deed Book 25356, Pages 259-260, Fulton County, Georgia records.  A true and correct copy of this Forged Power of Attorney is attached hereto as **<u>Exhibit B</u>**.

24.    Defendant Ms. Duvall was a purported witness to, and also notarized Ms. Meshechok's purported signature, on this Forged Power of Attorney, and

Defendant Ms. Brown was a purported witness to Ms. Meshechok's purported signature.

25.    Because Ms. Meshechok was physically not present to sign the Forged Power of Attorney, and was not in the United States on the date of her purported signature, Defendants Ms. Duvall and Ms. Brown were not in the presence of Ms. Meshechok when the Forged Power of Attorney was signed, and they did not witness Ms. Meshechok executing the Forged Power of Attorney.

26.    Ms. Meshechok had no knowledge of this October 2, 1998 Forged Power of Attorney, did not execute it, and was not in the United States on the October 2, 1998 date of her purported execution of it.

27.    The signature that appears on this October 2, 1998 Forged Power of Attorney is not Ms. Meshechok's signature.  Rather, the signature is virtually identical to the purported signature of Ms. Meshechok that, on information and belief, Mr. R. Meshechok forged on other documents that Ms. Meshechok discovered in or about the latter part of 2021.

28.    On information and belief, Mr. R. Meshechok forged Ms. Meshechok's signature on this October 2, 1998 Forged Power of Attorney.

29.    On or about October 13, 1998, this Forged Power of Attorney was recorded with the Fulton County Clerk's Office.

30.    Ms. Meshechok had no reason to believe that this Forged Power of Attorney existed at all until she first discovered its existence in or about March of 2022 in the course of investigation based on facts, as alleged herein, that Ms. Meshechok learned in or about early 2022.

31.    On or about October 12, 1998, Mr. R. Meshechok sold the Property in two parcels for Two Million Seven Hundred and Fifty Thousand Dollars ($2,750,000) and One Hundred Dollars ($100), respectively, to Defendants Mr. Helvie and Ms. Lynch, in a transaction consummated, on information and belief, in the office of Mr. R. Meshechok's attorney, Defendant Ms. Duvall.

32.    In furtherance of the sales transaction, Mr. R. Meshechok caused to be created a limited warranty deed and a quit claim deed (the "Forged Deeds") each stating that Ms. Meshechok's signature was applied "BY VIRTUE OF POWER OF ATTORNEY DATED OCTOBER 2, 1998 AND RECORDED IN DEED BOOK _____, PAGE _____, FULTON COUNTY, GEORGIA DEED RECORDS."  The Forged Deeds neither identify the deed book number nor the page number of the purported power of attorney document.

33.    The Forged Deeds are evidenced by that certain limited warranty deed recorded at Deed Book 25356, Pages 267-270, Fulton County, Georgia records, and by that as certain quit claim deed recorded at Deed Book 25356, Pages 263-266,

Fulton County, Georgia records.  True and correct copies of the Forged Deeds are attached together hereto as **Exhibit C**.

34.     On each of these Forged Deeds regarding the October 12, 1998 transaction, Mr. R. Meshechok signed his own name in place of Ms. Meshechok's name, and merely printed Ms. Meshechok's name above his signature on the line designated for Ms. Meshechok's signature.  On information and belief, Mr. R. Meshechok applied Ms. Meshechok's signature to the Forged Deeds in reliance upon the Forged Power of Attorney.

35.     Defendant Ms. Duvall, who had notarized the purported Power of Attorney dated October 2, 1998, as a Notary Public, signed as a purported witness to the signatures of Mr. R. Meshechok and Ms. Meshechok on each of the October 12, 1998 deeds.  Defendant DOE 1 notarized the Joint Tenants' signatures on each of the October 12, 1998 deeds.

36.     Ms. Meshechok did not know that Mr. R. Meshechok sold the Property in October 12, 1998, because, *inter alia*, Mr. R. Meshechok never sought her permission, and never disclosed to her that he had sold the property, and Ms. Meshechok was not physically present within the United States at the time of the purported sale.   Ms. Meshechok and Mr. R. Meshechok maintained multiple residences during the relevant period.

37.    Up until and including in March of 2022, Ms. Meshechok believed that she and Mr. R. Meshechok still owned the Property together.  Ms. Meshechok did not discover, and could not reasonably have discovered, that Mr. R. Meshechok sold the property in 1998 because, *inter alia*, she continued to have trust in Mr. R. Meshechok, and Mr. R. Meshechok deceived her as to the disposition of the Property by never disclosing to her that he had forged her signature on the Forged Power of Attorney, and that he had caused the Forged Deeds to be recorded.

38.    Ms. Meshechok received no proceeds nor any cash nor other consideration from the sale of the Property.  On information and belief, Mr. R. Meshechok retained all proceeds from his unauthorized sale of the Property in 1998 and/or conveyed some or all such proceeds to one or all of the other Defendants.  On information and belief, the value of sales proceeds from the Property that Defendants continued to possess, which rightfully are the property of Ms. Meshechok, has increased substantially.

39.    The amount of proceeds from the sale of the Property to which Ms. Meshechok was entitled upon the date of such sale was at least One Million Three Hundred Seventy-Five Thousand and Fifty Dollars ($1,375,050), representing at least her 50 percent interest in the Property that was held by the Joint Tenants in joint tenancy with rights of survivorship. Today, the Property is listed for sale at Five Million Five Hundred Thousand Dollars ($5,500,000).

40.    The purported October 2, 1998 Power of Attorney was a fraudulent document created by, at minimum, Defendants Mr. R. Meshechok, Mr. A. Meshechok, Ms. Duvall, and Ms. Brown for the purpose of defrauding Ms. Meshechok of her ownership interest in the Property and unlawfully converting such interest to Mr. R. Meshechok.

41.    On information and belief, Defendants Mr. R. Meshechok, Mr. A. Meshechok, Ms. Duvall, and/or Ms. Brown reasonably foresaw that they would use the mail or wires in furtherance of their plan or scheme to defraud Ms. Meshechok.

42.    On information and belief, Defendants Mr. R. Meshechok, Mr. A. Meshechok, Ms. Duvall, and/or Ms. Brown actually used the mail or wires in furtherance of the foregoing plan or scheme to defraud Ms. Meshechok when they, *inter alia*, spoke by telephone, corresponded and/or conveyed documents via U.S. Mail in furtherance of their plan or scheme, and/or conveyed funds via mail or wires.

43.    The purported October 12, 1998 deeds regarding the sale of the Property where fraudulent conveyances of Ms. Meshechok's property interest in the Property without her consent and without her knowledge, for the purpose of defrauding Ms. Meshechok of her ownership interest in the Property and unlawfully converting such interest to Mr. R. Meshechok.

44.     On information and belief, Defendants profited from the execution and recordation of the fraudulent Power of Attorney and the fraudulent deeds alleged herein, at the expense of, and to the detriment of, Ms. Meshechok.

45.     The actions of Defendants show willful misconduct, malice, fraud, wantonness, oppression, and/or that entire want of care which would raise the presumption of conscious indifference to consequences.

46.     The Joint Tenants' divorce was finalized on or about January 29, 2020 in Germany.

47.     At no time prior to the Joint Tenants' divorce, or thereafter, did Mr. R. Meshechok disclose to Ms. Meshechok that he had sold the Property and retained her share of the sales proceeds for himself.

## COUNT I: CONVERSION

## (AGAINST ALL DEFENDANTS EXCEPT MR. HELVIE AND MS. LYNCH)

48.     Plaintiff realleges and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

49.     Ms. Meshechok had a legal right of possession to her ownership interest in the Property.  Ms. Meshechok had a legal right to possession of 50 percent of the proceeds of the 1998 sale of the Property without her knowledge or consent, in the

amount of at least One Million, Three Hundred Seventy-Five Thousand and Fifty Dollars ($1,375,050).

50.    Defendants deposited the money into accounts that they controlled.

51.    Ms. Meshechok has made a demand for return of the converted property, but Mr. R. Meshechok has failed to provide it.  In the alternative, Ms. Meshechok hereby makes a demand for the return of the converted property.

52.    Defendants acted willfully and maliciously in an effort to defraud Ms. Meshechok of her ownership interest in the Property and her rightful share of the proceeds from the 1998 sale of the Property.

53.    As a result of this illegal conversion, Ms. Meshechok has been harmed by at least One Million, Three Hundred Seventy-Five Thousand and Fifty Dollars ($1,375,050).

## COUNT II: FRAUD

## (AGAINST MR. R. MESHECHOK)

54.    Plaintiff realleges and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

55.    Mr. R. Meshechok intentionally made false representations to Ms. Meshechok in an effort to induce Ms. Meshechok to refrain from acting to protect her ownership interest in the Property.  Such false representations included, *inter alia*, engaging in a pattern and practice of assuring Ms. Meshechok that Ms.

Meshechok could trust Mr. R. Meshechok; then when Ms. Meshechok first had reason to suspect there may be a problem with the status of the Property in or about late 2021, denying to Ms. Meshechok and/or to her family that there was any issue with the status of the Property.

56.    Mr. R. Meshechok knew that his misrepresentations to Ms. Meshechok were false, and/or made such misrepresentations to Ms. Meshechok with reckless disregard as to whether they were true or false.

57.    Mr. R. Meshechok made these misrepresentations with the intent to induce Ms. Meshechok to refrain from protecting her ownership interest in the Property and/or recovering her rightful share of proceeds from the 1998 sale.

58.    Ms. Meshechok relied on these misrepresentations based on the reasonable belief that Mr. R. Meshechok and Ms. Meshechok continued to own the Property as joint tenants with rights of survivorship.

59.    Ms. Meshechok justifiably and detrimentally relied on Mr. R. Meshechok's misrepresentations.

60.    Mr. R. Meshechok acted willfully and intentionally to deceive Ms. Meshechok in an effort to induce her to rely on his misrepresentations.

61.    Mr. R. Meshechok received, converted, and retained Ms. Meshechok's ownership interest in the Property.  As a result, Plaintiff suffered damages in the

amount of at least One Million, Three Hundred Seventy-Five Thousand and Fifty Dollars ($1,375,050).

## COUNT III: VIOLATION OF GEORGIA CIVIL RICO ACT

## (AGAINST ALL DEFENDANTS EXCEPT MR. HELVIE AND MS. LYNCH)

62.    Plaintiff realleges and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

63.    Defendants formed a group or association and associated and identified as a group with a common purpose or goal of defrauding Ms. Meshechok and/or converting for themselves Ms. Meshechok's ownership interest in the Property and/or the proceeds from the 1998 sale of the Property.

64.    The Defendants each constitute a "person" as defined under Georgia's RICO statute.  O.G.C.A. § 16-1-3(12).

65.    The Defendants engaged in a pattern of racketeering activity through engaging in at least two incidents of fraud and theft, which incidents were violations of, *inter alia*, O.C.G.A. §§ 16-8-2, 16-8-3, 16-8-4, 16-9-1, 16-9-2, 16-9-6, 16-9-51, 16-9-53, 16-9-121, 16-10-71, 16-10-72, 23-2-52, 51-6-1, 51-6-2, 51-6-4, 51-9-1, 51-9-2.  Specifically, as set forth in more detail elsewhere in this Complaint, Defendants forged Ms. Meshechok's signature on the purported 1998 Power of Attorney and/or on the 1998 deeds, committed false swearing in falsely swearing as to the

authenticity of Ms. Meshechok's purported signatures on the 1998 Power of Attorney and/or on the 1998 deeds, in converting for themselves Ms. Meshechok's ownership interest in the Property and/or Ms. Meshechok's rightful share of proceeds from the 1998 sale of the Property, and in committing fraud in furtherance of inducing Ms. Meshechok to refrain from protecting her ownership interest in the Property and/or recovering her rightful share of proceeds from the 1998 sale.

66.    Each Defendant agreed to and did participate in the enterprise and the illegal activity of the enterprise directly through, among other things, misrepresentations regarding the status of the Property, and/or the creation and recordation of the 1998 purported Power of Attorney and 1998 deeds reflecting conveyance of the Property, and/or the sequestering and conversion of Ms. Meshechok's rightful share of proceeds from the 1998 sale of the Property.

67.    These practices occurred at least three times when Defendants crafted three separate forgeries of Ms. Meshochok's purported signature, on the 1998 purported Power of Attorney, and on each of the 1998 deeds, as alleged herein.  All of these acts occurred after July 1, 1998, and at least one incident occurred within four years of a prior incident.

68.    Defendant's continued commission of predicate acts related to theft constitute a pattern of racketeering behavior.

69.    On information and belief, Defendants maintained shared access to some or all of the funds generated from the enterprise herein alleged.

70.    The predicate acts of fraud, forgery, and/or conversion were all interrelated in that the 1998 purported Power of Attorney and 1998 deeds, and related communications, were made systematically in furtherance depriving Ms. Meshechok of her ownership interest in the Property and/or of her rightful share of proceeds from the 1998 sale of the Property, and converting such ownership interest and/or sales proceeds to Defendants instead.

71.     Defendants collectively were an enterprise, and each of the Defendants is individually an enterprise.

72.    Defendants acted willfully and maliciously and ultimately succeeded in their scheme to defraud Ms. Meshechok and convert her property through a pattern of racketeering activity to acquire or gain control of Plaintiff's persona property, including money.

73.    As a direct and proximate result of Defendants' racketeering activity, Ms. Meshechok has suffered actual damages of at least One Million, Three Hundred Seventy-Five Thousand and Fifty Dollars ($1,375,050) in loss of her ownership interest in the Property and/or her rightful share of proceeds from the 1998 sale of the Property.

## COUNT IV: CONSPIRACY TO VIOLATE GEORGIA CIVIL RICO ACT (AGAINST ALL DEFENDANTS EXCEPT MR. HELVIE AND MS. LYNCH)

74.   Plaintiff realleges and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

75.   Beginning in 1998, the Defendants came together, or endeavored to come together, for a common purpose, willfully agreed, and conspired to defraud the Plaintiff and convert her property, and commit false swearing in furtherance thereof, in violation of O.C.G.A. §§ 16-8-2, 16-8-3, 16-8-4, 16-9-1, 16-9-2, 16-9-6, 16-9-51, 16-9-53, 16-9-121, 16-10-71, 16-10-72, 23-2-52, 51-6-1, 51-6-2, 51-6-4, 51-9-1, 51-9-2 and Georgia's RICO Act.

76.   The Defendants, and each of them, joined this conspiratorial scheme that contemplated that at least one of the co-conspirators would commit a predicate act, or an act in furtherance of a predicate act, in violation of O.C.G.A. §§ 16-8-2, 16-8-3, 16-8-4, 16-9-1, 16-9-2, 16-9-6, 16-9-51, 16-9-53, 16-9-121, 16-10-71, 16-10-72, 23-2-52, 51-6-1, 51-6-2, 51-6-4, 51-9-1, 51-9-2 and Georgia's RICO Act.

77.   As a direct and proximate result of the Defendants' conspiracy to defraud Ms. Meshechok, convert her property, and commit false swearing in furtherance thereof, in violation of Georgia's RICO Act, each Defendants' attempt to join the conspiracy, and each of the Defendants' willfully joining the conspiracy,

Ms. Meshechok suffered injury in the form of misappropriated assets of at least One Million, Three Hundred Seventy-Five Thousand and Fifty Dollars ($1,375,050).

## COUNT V: VIOLATION OF FEDERAL CIVIL RICO ACT

## (AGAINST ALL DEFENDANTS EXCEPT MR. HELVIE AND MS. LYNCH)

78.    Plaintiff realleges and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

79.    Each of the Defendants is a "Person" under 18 U.S.C. § 1961(a) because each of the Defendants was either an individual or, on information and belief, an entity formed under Georgia law.

80.    The Defendants jointly are an "Enterprise" under 18 U.S.C. § 1961(4) because they are, or were at all relevant times, a group of persons associated in fact for the purpose of misappropriating Ms. Meshechok's assets through fraud, deceit, misrepresentation, and theft (the "Fraudulent Conversion Enterprise").    On information and belief, the Fraudulent Conversion Enterprise operated continuously for at least several months.

81.    The Fraudulent Conversion Enterprise is distinct from each of the Defendant "Persons" under 18 U.S.C. § 1961(a) because none of the Defendants is alleged to constitute an "Enterprise" under 18 U.S.C. § 1961(4).

82.     The Defendants engaged in a pattern of racketeering activity through engaging in at least two incidents of fraud and theft, which incidents were violations of, *inter alia*, 18 U.S.C. §§ 1341, 1343; O.C.G.A. §§ 16-8-2, 16-8-3, 16-8-4, 16-9-1, 16-9-2, 16-9-6, 16-9-51, 16-9-53, 16-9-121, 16-10-71, 16-10-72, 23-2-52, 51-6-1, 51-6-2, 51-6-4, 51-9-1, 51-9-2.  Specifically, as set forth in more detail elsewhere in this Complaint, Defendants forged Ms. Meshechok's signature on the purported 1998 Power of Attorney and/or on the 1998 deeds, committed false swearing in falsely swearing as to the authenticity of Ms. Meshechok's purported signatures on the 1998 Power of Attorney and/or on the 1998 deeds, in converting for themselves Ms. Meshechok's ownership interest in the Property and/or Ms. Meshechok's rightful share of proceeds from the 1998 sale of the Property, and in committing fraud in furtherance of inducing Ms. Meshechok to refrain from protecting her ownership interest in the Property and/or recovering her rightful share of proceeds from the 1998 sale.

83.     Each Defendant agreed to and did participate in the enterprise and the illegal activity of the enterprise directly through, among other things, misrepresentations regarding the status of the Property, and/or the creation and recordation of the 1998 purported Power of Attorney and 1998 deeds reflecting conveyance of the Property, and/or the sequestering and conversion of Ms. Meshechok's rightful share of proceeds from the 1998 sale of the Property.

84.    These practices occurred at least three times when Defendants crafted three separate forgeries of Ms. Meshochok's purported signature, on the 1998 purported Power of Attorney, and on each of the 1998 deeds, as alleged herein.  All of these acts occurred after July 1, 1998, and at least one incident occurred within four years of a prior incident.  The 1998 purported Power of Attorney and the 1998 deeds were created by Defendants, or at the Defendants' direction, in a like manner, and recorded with the Fulton County Clerk's Office in a like manner.  Accordingly, the Defendants' engaged in a pattern of racketeering activity.

85.    In violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, Defendants conspired to engage in, and did engage in, certain predicate acts over time in a concerted effort to accomplish the predominant objective of systematically defrauding the Plaintiff and converting her property.

86.    Defendants engaged in monetary transactions in property derived from specified unlawful activity, which is considered a predicate act under federal RICO Act, 18 U.S.C. § 1961.  Defendants are in violation of this federal crime listed in 18 U.S.C. § 1957 as they did knowingly attempt to engage in, and did engage in, monetary transactions in in property that was derived by criminally defrauding Ms. Meshechok, criminally converting her property, and criminally committing false swearing as alleged herein.  These transactions occurred each time Defendants

forged Ms. Meshechok's signature or falsely swore that her signature was valid, and each time Defendants recorded such forged documents with the Fulton County Clerk's Office.

87.    On information and belief, Defendants also engaged in predicate acts of mail fraud as listed under 18 U.S.C. § 1961.  Defendants violated this federal statute by devising a scheme to obtain money or property by means of false or fraudulent pretenses, and using the postal service in furtherance of this scheme.  Each time Defendants submitted or received documents through the mail related to the sale of the Property, Defendants utilized the postal service in furtherance of their scheme to fraudulently misappropriate funds from Ms. Meshechok.  Documents reflecting such utilization of the postal service are uniquely in the possession, custody, and/or control of Defendants and, on information and belief, will be discovered by Ms. Meshechok.

88.    On information and belief, these predicate acts took place of the span of at least several months.

89.    As a direct and proximate result of Defendants' efforts to devise and implement a scheme to defraud Ms. Meshechok and convert her property for their own pecuniary benefit, Ms. Meshechok has suffered an injury in the amount of at least One Million, Three Hundred Seventy-Five Thousand and Fifty Dollars ($1,375,050).  Such injury was by reason of Defendants' substantive RICO

violations and a direct and proximate result of the commission of the mail fraud and/or the Defendants' engagement in monetary transactions derived from specified unlawful activity.

## COUNT VI: CONSPIRACY TO VIOLATE OF

## FEDERAL CIVIL RICO ACT

## (AGAINST ALL DEFENDANTS EXCEPT MR. HELVIE AND MS.

## LYNCH)

90.   Plaintiff realleges and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

91.   Defendants each agreed and conspired to accomplish the common and unlawful plan of misappropriating funds belonging to Ms. Meshechok through the fraudulent scheme of the Fraudulent Conversion Enterprise.

92.   As a direct and proximate result of Defendants' conspiracy to defraud Ms. Meshechok in violation of the federal RICO Act, Ms. Meshechok suffered injury in the form of misappropriated assets of at least One Million, Three Hundred Seventy-Five Thousand and Fifty Dollars ($1,375,050).

## COUNT VII: UNJUST ENRICHMENT

## (AGAINST ALL DEFENDANTS)

93.   Plaintiff realleges and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

94.    In the alternative, Ms. Meshechok asserts this claim based on the contract implied in law.

95.    A benefit has been conferred on the Defendants in the amount of approximately One Million, Three Hundred Seventy-Five Thousand and Fifty Dollars ($1,375,050).  Defendants obtained this money by enacting a scheme to forge Ms. Meshechok's signature on the 1998 purported Power of Attorney and 1998 deeds as alleged herein, and to record these documents with the Fulton County Clerk's Office.

96.    It would be unjust and inequitable to allow the Defendants to retain the benefit conferred, because they made intentionally false representations to Ms. Meshechok and/or to the Fulton County Clerk's Office and/or to the purchaser of the Property on the pretense that Ms. Meshechok had consented to the 1998 sale of the Property when in fact she had not.  In reality, Ms. Meshechok never consented nor had knowledge that the Property was sold in 1998.

97.    Ms. Meshechok did not discovery, and could not reasonably have discovered, the fraudulent sale and conversion of her property because Mr. R. Meshechok concealed it from her.

98.    Ms. Meshechok has been damaged by Defendants actions to defraud her and convert her rightful share of the 1998 sales proceeds and or her ownership interest in the Property, and Ms. Meshechok demands the return of the property at

issue to which the Defendants have no entitlement, in the amount of at least One

Million, Three Hundred Seventy-Five Thousand and Fifty Dollars ($1,375,050).

## COUNT VIII: QUIET TITLE (O.C.G.A. § 23-3-40)

## (AGAINST DEFENDANTS MR. HELVIE AND MS. LYNCH)

99.    Plaintiff realleges and incorporates by reference each and every

allegation in the preceding paragraphs as if fully set forth herein.

100.    As discussed above, Ms. Meshechok never authorized Mr. R.

Meshechok to apply her signature to the Forged Deeds purporting to convey the

Property from Mr. and Ms. Meshechok to Defendants Mr. Helvie and Ms. Lynch.

101.    Ms. Meshechok did not execute the Forged Deeds, and her purported

signature on the documents is a forgery by virtue of the reference within the Forged

Deeds to the Forged Power of Attorney.

102.    If Mr. R. Meshechok's interest in the Property was transferred to Mr.

Helvie and Ms. Lynch by virtue of the Forged Deeds, this severed the joint tenancy

and therefore Plaintiff remains a fifty percent (50%) tenant in common owner of the

Property.

103.    Plaintiff cannot immediately or effectually maintain or protect her

rights in the Property by any other course of proceeding open to her.

104.   The Forged Deeds and Forged Power of Attorney are instruments that would operate to throw a cloud or suspicion on Plaintiff's title to the Property and have been vexatiously and injuriously used against her.

105.   Plaintiff suffers some present injury by reason of the Forged Deeds and Forged Power of Attorney, and has reason to apprehend that the evidence upon which she relies to impeach or invalidate the same as a claim upon her title to the Property may be lost or impaired by lapse of time.

106.   Plaintiff is therefore entitled to a decree from this Court that she is a fifty percent (50%) owner of the Property as a tenant in common, with said interest free and clear of any interests of Mr. Helvie and Ms. Lynch, and that the Forged Deeds and the Forged Power of Attorney be canceled of record or modified by the Court so that Plaintiff is reflected as a fifty percent (50%) owner of the Property as a tenant in common.

107.   Further, the Court should tax all costs against Defendants pursuant to O.C.G.A. § 23-3-41(b).

108.   Plaintiff is recording a *Notice of Lis Pendens* against the Property in connection with this Lawsuit.

## COUNT VIII: DECLARATORY JUDGMENT

### (In the Alternative)

109.   Plaintiff realleges and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

110.   The parties are in a position of uncertainty regarding their interests in the Property.

111.   There is an actual controversy between the parties.

112.   Plaintiff is without an adequate remedy at law and has exhausted all attempts to negotiate with Defendants toward a resolution on this matter.

113.   Plaintiff therefore requests that the Court issue a decree that Plaintiff is a fifty percent owner of the Property as a tenant in common, with said interest free and clear of any interests of Mr. Helvie and Ms. Lynch.

## COUNT IX: ATTORNEYS' FEES AND COSTS OF LITIGATION

### (AGAINST ALL DEFENDANTS)

114.   Plaintiff realleges and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

115.   Defendants have acted in bad faith, have been stubbornly litigious, and/or have caused Plaintiff unnecessary trouble and expense by requiring her to file this lawsuit in order to address the actions and damage complained of herein.

116.   Plaintiff therefore makes a request for attorney's fees and costs under O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Meshechok respectfully prays for relief as follows:

    a.  Judgment in favor of Plaintiff and against Defendants with respect to all claims alleged herein;

    b.  Judgment in an amount equal to three times the actual damages pursuant to 18 U.S.C. § 1964(c) and OCGS 16-4-4;

    c.  Judgment entered ordering Defendants to pay punitive damages to Plaintiff;

    d.  Consequential damages and interest pursuant to Plaintiff's conversion claim;

    e.  The Decrees and Orders requested in Counts VII and VIII of the Complaint;

    f.  Attorneys' fees and costs of investigation and litigation reasonably incurred against Defendants Mr. R. Meshechok, Mr. A. Meshechok, Ms. Duvall, and Ms. Brown pursuant to the applicable civil RICO statutes;

    g.  Attorneys' fees and costs of litigation pursuant to O.C.G.A. § 13-6-11 against all Defendants; and

h.  An award of any such other relief as this Court deems just and

proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable

[Signature of counsel on following page]

This 1st day of June, 2022.

Respectfully submitted,

ROUNTREE LEITMAN & KLEIN, LLC

By: /s/ David S. Klein
David S. Klein
Georgia Bar No. 183389
Alexandra M. Dishun
Georgia Bar No. 184502

Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, GA 30329
(404) 856-0540
dklein@rlklawfirm.com
adishun@rlklawfirm.com

**Counsel for Plaintiff**

# EXHIBIT A

Complaint for Damages

GEORGIA FULTON COUNTY
FILED AND RECORDED

92 JUN -2 PM 12: 38

JUANITA HICKS
CLERK, SUPERIOR COURT

STATE OF GEORGIA
COUNTY OF FULTON

GEBERAL WARRANTY DEED

THIS GENERAL WARRANTY DEED, made as of this 1st day of
June, 1992, between MID-AMERICAN HOLDING CORPORATION, a Georgia
corporation formerly known as OTAKA INTERNATIONAL, INC., as
party of the first part (hereinafter referred to as "Grantor")
and V.M. ROBERT MESHECHOK and RENATE URSULA MOCZALA also known
as MRS. V.M. ROBERT MESHECHOK, not as Tenants in Common but as
Joint Tenants with Rights of Survivorship, as parties of the
second part (hereinafter collectively referred to as "Grantee").

W I T N E S S E T H:

That Grantor, for and in consideration of the sum of
TEN DOLLARS ($10.00) and other good and valuable consideration
in hand paid at and before the sealing and delivery of this
Deed, the receipt and sufficiency of which are hereby
acknowledged, has granted, bargained, sold, aliened, conveyed
and confirmed and by this Deed does grant, bargain, sell, alien,
convey and confirm unto Grantee all that tract or parcel of
land lying and being in Land Lot 216 of the 17th District,
Fulton County, Georgia, and being more particularly described
on Exhibit "A" attached hereto and made a part hereof by this
reference, including all improvements, fixtures, rights,
privileges, easements, hereditaments and appurtenances thereto
belonging, and all right, title and interest of Grantor in and
to the land lying in the bed of any street, road or avenue,
open or proposed, public or private, in from of or adjoining
said property to the center line thereof (hereinafter
collectively referred to as the "Property").

TO HAVE AND TO HOLD the said tract or parcel of land,
with the buildings thereon and with all and singular the
rights, members and appurtenances thereof, to the same being,
belonging, or in anywise appertaining, to the only proper use,
benefit and behoof of the said Grantee forever in FEE SIMPLE.

AND THE SAID GRANTOR will warrant and forever defend
the right and title to the above-described Property unto the
said Grantee against the claims of Grantor and all others
claiming by, through, or under all persons whomsoever.

IN WITNESS WHEREOF, Grantor has signed and sealed this
Deed on the date first above written.

Signed, sealed and delivered
in the presence of:

MID-AMERICAN HOLDING
CORPORATION formerly known as
OTAKA INTERNATIONAL, INC.

By: _____

Hisayoshi Ota

Attest: _____
George Kelloff
Secretary

[CORPORATE SEAL]

## EXHIBIT "A"

ALL THAT TRACT or parcel of land lying and being in Land Lot 216 of the 17th District of Fulton County, Georgia, and being more particularly described as follows:

To find the TRUE POINT OF BEGINNING, commence at a point formed by the intersection of the northeasterly right-of-way of Paces Ferry Road (50-foot right-of-way) and the westerly right-of-way of Mt. Paran Road (40-foot right-of-way) if said rights-of-way were extended to form a corner, and running thence along the westerly right-of-way of Mt. Paran Road North 01° 46' 01" East a distance of 66.30 feet to a point located on the westerly right-of-way line of Mt. Paran Road, which point is the TRUE POINT OF BEGINNING.

From the TRUE POINT OF BEGINNING thus established, running thence in a southwesterly direction an arc distance of 92.88 feet to a point located on the northeasterly right-of-way line of Paces Ferry Road (which arc has a radius of 41.815 feet and is subtended by a chord bearing South 65° 02' 10" West, a chord distance of 74.93 feet); running thence in a northwesterly direction along the Northeasterly right-of-way line of Paces Ferry Road, the following courses and distances:

(1) In a Northwesterly direction an arc distance of 84.25' to a point (said arc having a radius of 370.77 and is subtended by a chord bearing North 75° 33' 00" West a chord distance of 84.07 feet);

(2) North 82° 03' 35" West a distance of 130.78 feet to a point;

(3) North 79° 55' 09" West a distance of 102.51 feet to a point;

(4) In a Northwesterly direction, an arc distance of 104.27 feet to a point (said arc having a radius of 226.88 feet and is subtended by a chord bearing North 66° 45' 12" west a chord distance of 103.35 feet);

(5) North 53° 35' 16" West a distance of 45.21 feet to an iron pin found.

Thence leaving the right-of-way line of Paces Ferry Road and running North 01° 56' 45" West a distance of 567.27 feet to an iron pin found; running thence North 01° 52' 33" west a distance of 123.97 feet to an iron pin found; running thence North 67° 12' 46" west a distance of 52.86 feet to a point; running thence North 81° 19' 19" east a distance of 423.12 feet to an iron pin found on the southwesterly right-of-way of Mt. Paran Road; running thence in a Southeasterly and Southwesterly direction along the Southwesterly and Southeasterly right-of-way line of Mt. Paran Road the following courses and distances:

BOOK 15335 PAGE 036

(1)   South 22° 44' 44" East a distance of 336.15 feet to a point;

(2)   South 20° 43' 51" East a distance of 49.20 feet to a point;

(3)   South 15° 45' 48" East a distance of 49.44 feet to a point;

(4)   South 11° 00' 07" East a distance of 49.16 feet to a point;

(5)   South 04° 28' 00" East a distance of 49.58 feet to a point;

(6)   South 03° 27' 00" East a distance of 24 feet to a point;

(7)   South 01° 46' 01" West a distance of 343.06 feet to a point, which point is the TRUE POINT OF BEGINNING.

Said tract or parcel of land containing 9.399 acres, more or less, as shown on plat of survey for V.M. Robert Meshechok dated May 28, 1992, prepared by Wrindt-McDuff Associates, Inc. and certified by Charles C. Franklin, G.R.L.S. No. 2143, which plat of survey is incorporated herein by reference.

37081:1-2

15335 0037

# EXHIBIT B

Complaint for Damages

25356
0259

GEORGIA, FULTON COUNTY
FILED AND RECORDED

98 OCT 13 PM 2:07

JUANITA HICKS
CLERK, SUPERIOR COURT

26352

Once Recorded Return To:

Sharon C. Duvall, Esquire
Smith, Gambrell & Russell, LLP
Suite 3100, Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309-3592

After recording,
return this document
to: MORRIS, MANNING & MARTIN
5775-B Peachtree-Dunwoody Rd.
Suite 150
Atlanta, GA 30342

## POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS that the undersigned RENATE URSULA MOCZALA A/K/A MRS. V. M. ROBERT MESHECHOK A/K/A RENATE M. MESHECHOK, a resident of Atlanta, Georgia (hereinafter referred to as the "Principal"), having a mailing address at 1266 W. Paces Ferry Road, Suite 501, Atlanta, Georgia 30327, being desirous of arranging for the transaction of business in Georgia through an attorney-in-fact, has appointed and does hereby appoint V. M. ROBERT MESHECHOK, a resident of Atlanta, Georgia (hereinafter referred to as the "Agent"), having a mailing address at 1266 W. Paces Ferry Road, Suite 501, Atlanta, Georgia 30327, as the true and lawful attorney-in-fact of the Principal, and does authorize the Agent, for the Principal and in the name, place and stead of the Principal:

(a)   To execute and deliver on behalf of Principal any and all documents deemed necessary by my attorney-in-fact to consummate the leasing or sale of all or a portion of that certain property being known as 3655 Paces Ferry Road, Atlanta, Fulton County, Georgia 30327 and being more particularly described on Exhibit "A" attached hereto and incorporated herein by this reference (the "Property"); said documents (whether or not under seal) shall include, but not be limited to, leases (which shall be upon such terms and conditions as Agent deems advantageous or acceptable), contracts of purchase and sale (which shall be upon such terms and conditions as Agent deems advantageous or acceptable), deeds (with or without warranty of title), closing statements, promissory notes, certifications, and affidavits (including, but not limited to, affidavits regarding involvement of real estate brokers in connection with the sale, leasing or management of the Property, title affidavits, affidavits required pursuant to Section 1445 of the Internal Revenue Code of 1986, as amended, and affidavits required pursuant to Official Code of Georgia Annotated Section 48-7-128, as amended);

RE: 38846

BOOK 25356 PAGE 259

25356
0260

(b)  To accept, on behalf of Principal, funds, promissory notes, deeds to secure debt, security agreements and documents of any kind and for any purpose deemed necessary or proper by Agent to carry out the acts herein authorized, all on such terms and conditions as said Agent deems advantageous or acceptable; and

(c)  To do any other thing or perform any other act, not limited to the foregoing, which the Principal might herself do, in connection with the consummation of the leasing and/or sale of the Property.

This  Power  of  Attorney  shall  remain  effective  until  an affidavit  executed  by  Principal  and  expressing  the  desire  of Principal to terminate this Power of Attorney has been duly filed in the Records of Clerk, Superior Court, Fulton County, Georgia.

IN WITNESS WHEREOF, the Principal has executed this Power of Attorney under seal, this _2nd_ day of ___October___, 1998.

Signed, sealed and
delivered in the
presence of:

_Darlene Brown_
Unofficial Witness

_Deborah C. Duvall_
Notary Public

My Commission expires:

(NOTARIAL SEAL)

_Renate Ursula Moczala_ (SEAL)
RENATE URSULA MOCZALA A/K/A
MRS.  V.  M.  ROBERT  MESHECHOK
A/K/A RENATE M. MESHECHOK

-2-

RE: 38848

BOOK 25356 PG 260

# EXHIBIT C

Complaint for Damages

26352

Once Recorded Return To:
Shapard D. Ashley, Esquire
Capell, Howard, Knabe & Cobbs, P.A.
57 Adams Avenue (36104)
Post Office Box 2069
Montgomery, Alabama  36102-2069

STATE OF GEORGIA

COUNTY OF FULTON

GEORGIA, FULTON COUNTY
FILED AND RECORDED

98 OCT 13 PM 2:07

JUANITA HICKS
CLERK, SUPERIOR COURT

Fulton County, Georgia
Real Estate Transfer Tax
Paid $ _____
Date __10/13/98__
JUANITA HICKS
By: ____ Clerk, Superior Court
By: _____
Deputy Clerk

After recording,
return this document
MC MORRIS, HANNING & HINTON
3775-B Peachtree-Dunwoody Rd.
Suite 150
Atlanta, GA  30342

## QUITCLAIM DEED

THIS INDENTURE, dated and effective as of _October 12th_, 1998, between V. M. ROBERT MESHECHOK AND RENATE URSULA MOCZALA, A/K/A MRS. V. M. ROBERT MESHECHOK, A/K/A RENATE M. MESHECHOK, individual residents of the State of Georgia (hereinafter collectively referred to as "Grantor") and WILLIAM W. HELVIE, a resident of the State of Alabama, and ELIZABETH DUPREE LYNCH, a resident of the State of Georgia not as tenants in common but as joint tenants with rights of survivorship (hereinafter collectively referred to as "Grantee"), the words "Grantor" and "Grantee" to include the respective heirs, executors, legal representatives, successors and assigns of said parties where the context requires or permits;

## W I T N E S S E T H :

That Grantor, for and in consideration of the sum of TEN DOLLARS ($10.00) AND OTHER GOOD AND VALUABLE CONSIDERATIONS, in hand paid, at and before the sealing and delivery of these presents, the receipt of which is hereby acknowledged by Grantor, has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell, convey and forever QUITCLAIM unto the Grantee, all that tract or parcel of land lying and being in Fulton County, Georgia, the same being more particularly described on Exhibit "A" attached hereto and by reference made a part hereof, TOGETHER WITH all and singular the rights, members and appur-tenances thereto, to the same being, belonging, or in anywise appertaining (hereinafter collectively referred to as the "Premises").

TO HAVE AND TO HOLD the Premises to Grantee, so that neither Grantor nor any person or persons claiming by, through, or under Grantor shall at any time, by any means or ways, have, claim or demand any right or title to the Premises.

BOOK 25356 PG 263   RE/62965

IN WITNESS WHEREOF, the Grantor has executed this instrument under seal, as of the date first above written.

Signed, sealed and delivered in the presence of:

_____Sharon C. Burrell_____
Witness

_____
Notary Public

My Commission Expires:

(NOTARIAL SEAL)
GEORGIA
PUBLIC

GRANTOR:

_____ (SEAL)
V. M. ROBERT MESHECHOK

Renate Ursula Moczala

_____ (SEAL)
RENATE URSULA MOCZALA, A/K/A
MRS. V. M. ROBERT MESHECHOK,
A/K/A RENATE M. MESHECHOK, BY
V. M. ROBERT MESHECHOK, HER
ATTORNEY-IN-FACT, BY VIRTUE OF
POWER OF ATTORNEY DATED
OCTOBER 2, 1998, AND RECORDED
IN DEED BOOK _____, PAGE
_____,
FULTON COUNTY, GEORGIA DEED
RECORDS

-2-

RE/61945

BOOK 25356PG264

# Exhibit A

## TRACT "A"

All that tract or parcel of land lying and being in Land Lot 216, 17th District of Fulton County, Georgia, being more particularly described as follows:

Beginning at a point where the northerly right of way of Paces Ferry Road (50' R/W) intersects with the westerly radius of Mount Paran Road (40' R/W) and continuing thence 82.04 feet westerly along the arc of a curve bearing North 73° 42' 56" West with a chord distance of 81.87 feet and a radius of 370.77 feet to an iron pin set; thence North 14° 53' 30" West a distance of 449.58 feet to an iron pin set; thence North 59° 45' 21" West a distance of 56.85 feet to an iron pin set; thence North 13° 49' 35" West a distance of 30 feet to an iron pin set; thence North 10° 33' 16" East 30 feet to an iron pin set; thence North 21° 18' 07" East a distance of 117.64 feet to an iron pin set; thence North 67° 17' 32" East 184.02 feet to an iron pin set on the westerly right of way of Mount Paran Road (40' R/W); thence South 22° 42' 28" East 143.15 feet to a point; thence South 21° 07' 57" East a distance of 49.23 feet to a point ; thence South 15° 32' 43" East 49.29 feet to a point; thence South 10° 57' 41" East 49.13 feet to a point; thence South 04° 37' 09" East a distance of 49.56 feet to a point; thence South 03° 00' 58" East a distance of 24.04 feet to a point; thence South 01° 46' 01" West a distance of 341.08 feet to a point; thence southerly and westerly along the arc of a curve bearing South 57° 11' 42" West a distance of 80.90 feet to the Point of Beginning.

The same being more particularly shown as Tract "A" on survey for Elizabeth Dupree Lynch and William E. Helvie, dated 9-3-98 by Survey Concepts, Inc., O. Eugene Day, RLS.

BOOK 25356 PAGE 65

pg 182

## TRACT "B"

All that tract or parcel of land lying and being in Land Lot 216, 17th District of Fulton County, Georgia, being more particularly described as follows:

To find the true Point of Beginning, commence at a point where the right of way of Paces Ferry Road (50' R/W) intersects with the right of way of Mount Paran Road (40' R/W) and continuing thence 82.04 feet along the arc of a curve bearing North 73° 42' 56" West with a chord distance of 81.87 feet and a radius of 370.77 feet to an iron pin set and the true Point of Beginning; From said Point of Beginning, run thence North 81° 03' 25" West an arc distance of 12.98 feet along the northerly right of way of Paces Ferry Road to a point; thence North 82° 03' 35" West along the right of way 80.67 feet to an iron pin; thence North 82° 23' 44" West along the right of way 50.14 feet to an iron pin set; thence North 79° 52' 45" West along said right of way 102.47 feet to an iron pin set; thence North 66° 45' 12" West along said right of way an arc distance of 104.27 feet to a point; thence North 53° 35' 16" West along said right of way 45.21 feet to an iron pin found; thence North 01° 56' 45" West 567.27 feet to a point; thence North 01° 52' 33" West 123.97 feet to an iron pin; thence North 67° 12' 46" West 52.86 feet to an iron pin; thence North 81° 19' 19" East 423.12 feet to an iron pin found on the westerly right of way of Mount Paran Road (40' R/W); thence South 22° 42' 28" East along said right of way 193.19 feet to an iron pin set; thence South 67° 17' 32" West 184.02 feet to an iron pin set; thence South 21° 18' 07" West 117.64 feet to an iron pin set; thence South 10° 33' 16" West 30 feet to an iron pin set; thence South 13° 49' 35" East 30 feet to an iron pin set; thence South 59° 45' 21" East 50.85 feet to an iron pin set; thence South 14° 53' 30" East 449.58 feet to a point on the northerly right of way of Paces Ferry Road and the Point of Beginning.

The same being more particularly shown as Tract "B" on that certain survey for Elizabeth Dupree Lynch and William E. Helvie dated 9-5-98 by Survey Concepts Inc., O. Eugene Kay, Georgia RLS.

BOOK 25356 PG 266

pg 2 of 2

26352

Once recorded return to:
Shapard D. Ashley, Esquire
Capell, Howard, Knabe & Cobbs, P.A.
57 Adams Avenue (36104)
Post Office Box 2069
Montgomery, Alabama 36102-2069

GEORGIA, FULTON COUNTY
FILED AND RECORDED

98 OCT 13 PM 2: 07

JUANITA HICKS
CLERK, SUPERIOR COURT
Fulton County, Georgia
Real Estate Transfer Tax
Paid $ 2,730.00
Date 10/13/98
JUANITA HICKS
Clerk, Superior Court
By: _____
Deputy Clerk

After recording,
return this document
to: MORRIS, MANNING & MARTIN
5775 Peachtree-Dunwoody Rd.
Suite 150
Atlanta, GA 30342

STATE OF GEORGIA

COUNTY OF FULTON

## LIMITED WARRANTY DEED

THIS INDENTURE, dated and effective as of _Oct. 12th_, 1998, between V. M. ROBERT MESHECHOK AND RENATE URSULA MOCZALA, A/K/A MRS. V. M. ROBERT MESHECHOK, A/K/A RENATE M. MESHECHOK, individual residents of the State of Georgia (hereinafter collectively referred to as "Grantor") and WILLIAM W. HELVIE, a resident of the State of Alabama, and ELIZABETH DUPREE LYNCH, a resident of the State of Georgia not as tenants in common but as joint tenants with rights of survivorship (hereinafter collectively referred to as "Grantee"), the words "Grantor" and "Grantee" to include the heirs, executors, legal representatives, successors and assigns of said parties where the context requires or permits;

## W I T N E S S E T H:

That Grantor, for and in consideration of the sum of TEN DOLLARS ($10.00) AND OTHER GOOD AND VALUABLE CONSIDERATIONS, in hand paid, at and before the sealing and delivery of these presents, the receipt of which is hereby acknowledged by Grantor, has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell and convey unto Grantee, all that tract or parcel of land lying and being in Fulton County, Georgia, the same being more particularly described on Exhibit "A" attached hereto and by reference made a part hereof, TOGETHER WITH all and singular the rights, members and appurtenances thereto, to the same being, belonging, or in anywise appertaining (hereinafter collectively referred to as the "Premises").

TO HAVE AND TO HOLD the Premises to the only proper use, benefit and behoof of Grantee, forever, in FEE SIMPLE.

AND GRANTOR will warrant and forever defend the right and title to the Premises unto Grantee against the claims of all persons claiming by, through or under Grantor, but not otherwise.

RE/62962

BOOK 25356 PG 267

IN WITNESS WHEREOF, Grantor has executed this instrument under seal, as of the date first above written.

Signed, sealed and delivered
in the presence of:

Witness

Notary Public

[AFFIX NOTARIAL SEAL AND
STAMP]\

GRANTOR:

_____ (SEAL)
V. M. ROBERT MESHECHOK

_____ (SEAL)
RENATE URSULA MOCZALA, A/K/A
MRS. V. M. ROBERT MESHECHOK,
A/K/A RENATE M. MESHECHOK, BY
V. M. ROBERT MESHECHOK, HER
ATTORNEY-IN-FACT, BY VIRTUE OF
POWER OF ATTORNEY DATED
OCTOBER 2, 1998 AND RECORDED
IN DEED BOOK _____, PAGE
_____, FULTON COUNTY, GEORGIA DEED
RECORDS

BOOK 25355 PAGE 268

## EXHIBIT "A"

ALL THAT TRACT or parcel of land lying and being in Land Lot 216 of the 17th District of Fulton County, Georgia, and being more particularly described as follows:

To find the TRUE POINT OF BEGINNING, commence at a point formed by the intersection of the northeasterly right-of-way of Paces Ferry Road (50-foot right-of-way) and the westerly right-of-way of Mt. Paran Road (40-foot right-of-way) if said rights-of-way were extended to form a corner, and running thence along the westerly right-of-way of Mt. Paran Road North 01° 46' 01" East a distance of 66.30 feet to a point located on the westerly right-of-way line of Mt. Paran Road, which point is the TRUE POINT OF BEGINNING.

From the TRUE POINT OF BEGINNING thus established, running thence in a southwesterly direction an arc distance of 92.88 feet to a point located on the northeasterly right-of-way line of Paces Ferry Road (which arc has a radius of 41.815 feet and is subtended by a chord bearing South 65° 02' 10" West, a chord distance of 74.93 feet); running thence in a northwesterly direction along the Northeasterly right-of-way line of Paces Ferry Road, the following courses and distances:

    (1)  In a Northwesterly direction an arc distance of 84.25' to a point (said arc having a radius of 370.77 and is subtended by a chord bearing North 75° 33' 00" West a chord distance of 84.07 feet);

    (2)  North 82° 03' 35" West a distance of 130.78 feet to a point;

    (3)  North 79° 55' 09" West a distance of 102.51 feet to a point;

    (4)  In a Northwesterly direction, an arc distance of 104.27 feet to a point (said arc having a radius of 226.88 feet and is subtended by a chord bearing North 66° 45' 12" West a chord distance of 103.35 feet);

    (5)  North 53° 35' 16" West a distance of 45.21 feet to an iron pin found.

Thence leaving the right-of-way line of Paces Ferry Road and running North 01° 56' 45" West a distance of 567.29 feet to an iron pin found; running thence North 01° 52' 33" West a distance of 123.97 feet to an iron pin found; running thence North 67° 12' 46" west a distance of 52.86 feet to a point; running thence North 81° 19' 19" east a distance of 423.12 feet to an iron pin found on the southwesterly right-of-way of Mt. Paran Road; running thence in a Southeasterly and Southwesterly direction along the Southwesterly and Southwesterly right-of-way line of Mt. Paran Road the following courses and distances:

BOOK 25356 PAGE 269

(1)  South 22° 44' 44" East a distance of 336.13 feet
     to a point;

(2)  South 20° 43' 51" East a distance of 49.20 feet
     to a point;

(3)  South 15° 45' 48" East a distance of 49.44 feet
     to a point;

(4)  South 11° 00' 07" East a distance of 49.16 feet
     to a point;

(5)  South 04° 28' 00" East a distance of 49.58 feet
     to a point;

(6)  South 03° 27' 00" East a distance of 34 feet to a
     point;

(7)  South 01° 46' 01" West a distance of 343.06 feet
     to a point, which point is the TRUE POINT OF BEGINNING.

Said tract or parcel of land containing 9.399 acres,
more or less, as shown on plat of survey for V.M.
Robert Meshechok dated May 28, 1992, prepared by
Wrindt-McDuff Associates, Inc. and certified by
Charles C. Franklin, G.R.L.S. No. 2143, which plat of
survey is incorporated herein by reference.

BOOK 25356 PAGE 270